ROBERT E. CARLISLE, Plaintiff v. CSX TRANSPORTATION, INC., Defendant

No. COA08-43

(Filed 4 November 2008)

**Railroads— negligence action—voluntary dismissal—tolling of statute of limitations**

The trial court erred in part by granting a voluntary dismissal without prejudice in a negligence action by a railroad employee arising from a workplace injury. The action was filed first in Virginia, dismissed without prejudice for improper venue, and refiled in North Carolina. Under the Federal Employees Liability Act (FELA), the court cannot incorporate the saving provision of N.C.G.S. § 1A-1, Rule 41, but may equitably toll the statute of limitations when appropriate without needing to rely on Rule 41. Here, the court erred by tolling the statute of limitations for a year after entry of the voluntary dismissal order with no basis other than the application of Rule 41. Tolling the statute of limitations for other periods (such as the pendency of the original Virginia action or subsequent N.C. action) was proper under FELA.

Appeal by Defendant from order entered 12 December 2007 by Judge Karl Adkins in Scotland County Superior Court. Heard in the Court of Appeals 10 September 2008.

*Moody, Strople, Kloeppel, Basilone & Higginbotham, Inc., by Claude W. Anderson, Jr., and Willard J. Moody, Sr., Pro Hac Vice; Moser, Garner, Bruner & Wansker, P.A., by Jerry L. Bruner; and Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene and Tobias S. Hampson, for Plaintiff-Appellee.*

*Millberg, Gordon & Stewart, P.L.L.C., by Frank J. Gordon and Seth C. Turner, for Defendant-Appellant.*

ARROWOOD, Judge.

CSX Transportation, Inc. (Defendant) appeals from an order granting Robert Carlisle's (Plaintiff's) motion for voluntary dismissal of his claim. We affirm in part and reverse in part.

The pertinent facts are summarized as follows: Plaintiff was born in 1943 and is a resident of Hamlet, North Carolina. He was employed by Defendant railroad as a brakeman and conductor for thirty-seven

years, from 1967 until 2004. Plaintiff's employment required him to walk on ballast, which is the base of crushed stone that supports train tracks. Plaintiff was twenty-four years old when he began working for Defendant. In his deposition, Plaintiff testified that as he aged from his 20's to his 50's, he found it increasingly uncomfortable to walk on the large and uneven ballast stone used by Defendant. In 1984, he suffered a knee injury that required surgery. In 2000, when he was 57, Plaintiff began experiencing significant knee pain, and consulted a physician. In January 2001 he was diagnosed with permanent damage to his knees caused by long-term exposure to walking on ballast.

On 11 December 2002, Plaintiff filed a complaint against Defendant in the state court of Virginia, in Portsmouth, Virginia. Plaintiff alleged that Defendant had been negligent in regards to the safety of the train yard work environment, specifically in its use of large and uneven ballast. He sought damages for injuries resulting from his many years of walking on the ballast. In June, 2004, about eighteen months after Plaintiff filed his lawsuit, Defendant moved to transfer the case to Richmond, Virginia. Thereafter, the parties continued to conduct discovery, and a trial date was set for October 2005, almost three years after Plaintiff filed his complaint. Shortly before the trial was to commence, Defendant moved to dismiss Plaintiff's claim for improper venue. On 7 October 2005 the trial court granted Defendant's motion and entered an order dismissing Plaintiff's complaint without prejudice. The dismissal order was entered on the condition that, if Plaintiff refiled by 15 December 2005, Defendant would not assert a statute of limitations defense based on time between the dismissal and Plaintiff's refiling the case.

On 29 November 2005 Plaintiff refiled his complaint in Scotland County, North Carolina. The case was scheduled for trial 27 August 2007. On 17 August 2007 Defendant filed a motion for summary judgment. Defendant asserted in relevant part that Plaintiff's claim had accrued at some time "in the 1980s and 1990s" and that the statute of limitations expired before Plaintiff filed his original complaint in December 2002.

A hearing was conducted on Defendant's motion on 27 August 2007. Defendant's summary judgment argument was based on excerpts from Plaintiff's deposition wherein Plaintiff testified that he had no trouble walking on the large uneven ballast in his 20's and 30's, but that in his 40's and 50's it became more difficult and caused an "abnormal" feeling in his knees. Plaintiff's counsel argued that this testimony showed only that, as Plaintiff aged, he experienced

more discomfort. A complicating factor was Plaintiff's traumatic knee injury and surgery in the 1980's.

The trial court took the matter under advisement overnight. The next day Plaintiff asked the trial court "to enter an order allowing us to voluntarily dismiss this case without prejudice pursuant to [N.C. Gen. Stat. § 1A-1,] Rule 41(a)." The Defendant opposed Plaintiff's motion. The trial court stated that "the Court will grant the motion. I believe in people having their day in court whenever possible. So, I'll grant your motion." The court's order, rendered in open court on 28 August 2007, was reduced to writing and filed on 12 December 2007. The order tolled the statute of limitations from the time Plaintiff first filed suit in Virginia, and allowed Plaintiff a year in which to refile. From this order, Defendant has appealed.

## Standard of Review

Plaintiff filed suit under the "Federal Employers' Liability Act (FELA), 35 Stat. 65, as amended, 45 U.S.C. §§ 51-60, [which] makes common carrier railroads liable in damages to employees who suffer work-related injuries caused 'in whole or in part' by the railroad's negligence." *Norfolk & Western R. Co. v. Ayers*, 538 U.S. 135, 140, 155 L. Ed. 2d 261, 271 (2003). "[Plaintiff] filed this case in state court under the FELA, 45 U.S.C. § 51 *et seq.*, which confers concurrent federal and state jurisdiction over FELA claims." *Shives v. CSX Transp.*, 151 F.3d 164, 166 (4th Cir. 1998).

"As a general matter, FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is federal." *St. Louis S.W. Ry. Co. v. Dickerson*, 470 U.S. 409, 411, 84 L. Ed. 2d 303, 306 (1985). " 'The decision of the United States Supreme Court upon the proper interpretation, construction, and effect of statutes regulating or affecting interstate and foreign commerce is conclusive upon all other tribunals when the same matters are called in question. And the decisions of the Federal courts are to be followed by the State courts, in the construction of the act.' " *Pyatt v. Southern R. Co.*, 199 N.C. 397, 402, 154 S.E. 847, 850 (1930) (quoting Richey, Federal Employer's Liability, (2 ed.), ch. 5, p. 33, sec. 20) (citations omitted).

---

Our decision in this case requires an understanding of the relationship between FELA and N.C. Gen. Stat. § 1A-1, Rule 41 (2007), as they pertain to the statute of limitations. The statute of limitations for an action brought under FELA is three years. 45 U.S.C. § 56 (2007)

("No action shall be maintained under this act [45 USCS §§ 51 et seq.] unless commenced within three years from the day the cause of action accrued."). Defendant argues that in its order granting Plaintiff's motion for voluntary dismissal, the trial court "erred in extending the statute of limitations under [FELA]." We agree in part and disagree in part.

Rule 41(a) states in pertinent part that:

(1) . . . [An action] may be dismissed by the plaintiff without order of court . . . at any time before the plaintiff rests his case[.] . . . If an action commenced within the time prescribed therefor, . . . is dismissed without prejudice under this subsection, a new action based on the same claim may be commenced within one year after such dismissal[.]

(2) Except as provided in subsection (1) . . . [an action] shall not be dismissed . . . save upon order of the judge and upon such terms and conditions as justice requires. Unless otherwise specified . . . dismissal under this subsection is without prejudice. If an action commenced within the time prescribed therefor . . . is dismissed without prejudice under this subsection, a new action . . . may be commenced within one year after such dismissal unless the judge . . . [specifies] a shorter time.

Thus, under Rule 41, after resting his case, a party loses the unfettered right to a voluntary dismissal available under Rule 41(a)(1). Further:

"For purposes of summary judgment motions, this Court holds that the record must show that plaintiff has been given the opportunity at the hearing to introduce any evidence relating to the motion and to argue his position. Having done so and submitted the matter to the [trial court] for determination, plaintiff will then be deemed to have 'rested his case' for the purpose of summary judgment and will be precluded thereafter in dismissing his case pursuant to Rule 41 during the pendency of the summary judgment motion."

*Alston v. Duke University*, 133 N.C. App. 57, 61, 514 S.E.2d 298, 301 (1999) (quoting *Wesley v. Bland*, 92 N.C. App. 513, 515, 374 S.E.2d 475, 477 (1988)). However, a party may still obtain a voluntary dismissal if ordered by the trial court under Rule 41(a)(2). In the instant case, it is undisputed that Plaintiff moved for dismissal after resting

CARLISLE v. CSX TRANSP., INC.

[193 N.C. App. 509 (2008)]

his case; consequently, it is governed under North Carolina law by Rule 41(a)(2).

The determination of whether to grant a Rule 41 motion and under what conditions the motion should be granted is in the trial court's discretion. *See, e.g., Smith v. Williams*, 82 N.C. App. 672-73, 673, 347 S.E.2d 842, 844 (1986) ("Dismissals entered pursuant to [Rule 41(a)(2)] are within the discretion of the trial court which may, in the further exercise of its discretion, dismiss with or without prejudice."). Accordingly, as a matter of North Carolina common law, a trial court has discretion to effectively extend the period of time available to file beyond the statute of limitations, by granting a plaintiff's motion for voluntary dismissal without prejudice. *See, e.g., Brisson v. Kathy A. Santoriello, M.D., P.A.*, 351 N.C. 589, 594, 528 S.E.2d 568, 571 (2000):

> "[A] party always has the time limit prescribed by the general statute of limitation and in addition thereto they get the one year provided in Rule 41(a)(1)." "If the action was originally commenced within the period of the applicable statute of limitations, it may be recommenced within one year after the dismissal, even though the base period may have expired in the interim." Thus, . . . under Rule 41, a plaintiff may "dismiss an action that originally was filed within the statute of limitations and then refile the action after the statute of limitations ordinarily would have expired."

(quoting *Whitehurst v. Virginia Dare Transport. Co.*, 19 N.C. App. 352, 356, 198 S.E.2d 741, 743 (1973); 2 Thomas J. Wilson, II & Jane M. Wilson, *McIntosh North Carolina Practice and Procedure* § 1647, at 69 (Supp. 1970); and *Clark v. Visiting Health Prof'ls*, 136 N.C. App. 505, 508, 524 S.E.2d 605, 607 (2000)).

However, a different rule applies to cases filed under FELA. The leading case on this subject is *Burnett v. New York Central R. Co.*, 380 U.S. 424, 13 L. Ed. 2d 941 (1965). In *Burnett*, the plaintiff filed a FELA action "in the Common Pleas Court of Hamilton County, Ohio" which was dismissed on the defendant's motion for improper venue. *Id.* at 424, 13 L. Ed. 2d at 943. The plaintiff promptly filed an identical claim in the proper federal court; however, although his original suit was timely, by the time his claim was dismissed for improper venue and then refiled, the statute of limitations had expired. The federal district court judge dismissed plaintiff's claim, and the United States Supreme Court reversed.

CARLISLE v. CSX TRANSP., INC.

[193 N.C. App. 509 (2008)]

In *Burnett,* the Supreme Court observed that it previously had "expressly held [that] the FELA limitation period is not totally inflexible, but, under appropriate circumstances, it may be extended beyond three years. . . . [T]he basic inquiry is whether congressional purpose is effectuated by tolling the statute of limitations in given circumstances." *Id.* at 427, 13 L. Ed. 2d at 945. The Court held that the plaintiff's timely filing of a FELA claim had tolled the statute of limitations during the pendency of that action:

> In order to determine congressional intent, we must examine the purposes and policies underlying the limitation provision, [and] the Act itself[.] . . . [We] conclude that it effectuates the basic congressional purposes in enacting this humane and remedial Act . . . to hold that when a plaintiff begins a timely FELA action in a state court of competent jurisdiction . . . and the state court action is later dismissed because of improper venue, the FELA limitation is tolled during the pendency of the state action.

*Id.* at 427-28, 13 L. Ed. 2d at 945.

The Court rejected the plaintiff's argument that the FELA statute of limitations incorporated the Ohio Saving Statute, holding that "[t]o allow the limitation provision to incorporate state saving statutes would produce nonuniform periods of limitation in the several States."

In sum, when a trial court enters an order allowing voluntary dismissal of a FELA claim, the court cannot incorporate the saving provision of Rule 41. However, the trial court may equitably toll the statute of limitations when appropriate, without needing to rely on Rule 41.

Against this backdrop, we consider the order entered in the present case, which states that:

> . . . Plaintiff, with the Defendant's objection noted, hereby voluntarily dismisses this action, pursuant to Rule 41(a) of the Rules of Civil Procedure, without prejudice. The parties agree that this is the first dismissal of these claims for purposes of Rule 41. The court rules that any statute of limitations for the plaintiff's claims in this cause are tolled from the date of the institution of the suit filed in the Circuit Court for the City of Portsmouth, Virginia, on December 11, 2002, Law No. 02-3623, provided the plaintiff refiles his Complaint in this cause within one year of the date that this Order is entered. Any statute of limitations defenses previ-

ously filed herein that existed at the time suit was filed in the Circuit Court of the City of Portsmouth, Virginia Law 02-3623, are preserved.

Defendant does not argue that the trial court abused its discretion in its general decision to grant Plaintiff's motion for a dismissal, and we find no abuse of discretion. We next evaluate the trial court's rulings on the statute of limitations.

The court's order tolls the statute of limitations for a time period that is best analyzed in four segments:

1. The time period between December 2002, when Plaintiff filed suit in Virginia, until the case was dismissed for improper venue.

2. The time period between the dismissal of the Virginia case and refiling in North Carolina.

3. The time that the case was pending in North Carolina until the trial court allowed Plaintiff's motion for voluntary dismissal without prejudice.

4. The additional year from the date the trial court entered its order allowing dismissal.

We first consider the period between the initial filing of Plaintiff's claim and its dismissal for improper venue. *Burnett* held that, where a plaintiff files a FELA action that is later dismissed for improper venue, the FELA statute of limitations may be equitably tolled during the pendency of the original action. As that is Plaintiff's situation, we conclude that under *Burnett* the trial court properly tolled the statute of limitations from the date that Plaintiff first filed suit in Virginia until the date the case was dismissed in Virginia for improper venue. Accordingly, this part of the trial court's order should be affirmed.

The Virginia trial court's order dismissing Plaintiff's action for improper venue was conditioned on Defendant's not raising a statute of limitations defense for the period between the dismissal and Plaintiff's refiling his case. Defendant does not argue that this was improper. We conclude that this part of the trial court's also order should be affirmed.

We next examine the trial court's tolling of the statute of limitations during the pendency of the case in North Carolina. As discussed above, although Rule 41 could not be used to toll the FELA

statute of limitations for the time that Plaintiff's case was pending in North Carolina, the trial court had the authority to toll the FELA statute of limitations if appropriate. *See Burnett*, 380 U.S. at 427, 13 L. Ed. 2d at 944-45 (noting that United States Supreme "Court has expressly held [that] the FELA limitation period is not totally inflexible, but, under appropriate circumstances, it may be extended beyond three years.").

In the instant case, the court did not state the reason for its order or make findings of fact. However, "[t]his Court has stated, 'absent a specific request made pursuant to Rule 52(a)(2), a trial court is not required to either state the reasons for its decision or make findings of fact showing those reasons.' When 'there is no suggestion in the record that defendant asked for findings of fact or conclusions of law to be included in the trial court's order, the court's failure to do so is not reversible error.' " *Couch v. Bradley*, 179 N.C. App. 852, 855, 635 S.E.2d 492, 494 (2006) (quoting *Strickland v. Jacobs*, 88 N.C. App. 397, 399, 363 S.E.2d 229, 230 (1988); and *Granville Med. Ctr. v. Tipton*, 160 N.C. App. 484, 494, 586 S.E.2d 791, 798 (2003)).

Moreover, where "a trial court has reached the correct result, the judgment will not be disturbed on appeal even where a different reason is assigned to the decision." *Eways v. Governor's Island*, 326 N.C. 552, 554, 391 S.E.2d 182, 183 (1990) (citations omitted). "Where no findings are made, proper findings are presumed, and our rôle on appeal is to review the record for competent evidence to support these presumed findings." *Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 615, 532 S.E.2d 215, 217-18 (2000). Accordingly, we uphold a trial court's order if it can be sustained on a valid legal basis for which the record contains competent evidence. In the instant case, we conclude that the record contains evidence supporting the presumed findings of fact necessary to support equitable tolling of the FELA statute of limitations for the period when Plaintiff's case was pending in North Carolina.

As discussed above, we apply federal law to the issue of whether equitable tolling of the FELA statute of limitations was appropriate:

> The three-year limitations period in the FELA is a condition of liability constituting a substantial part of the right created. Hence, federal law controls the application of the limitations period.

*Noakes v. AMTRAK*, 312 Ill. App. 3d 965, 967, 729 N.E.2d 59, 62 (2000) (internal quotation marks and citations omitted). In *Burnett, supra,*

the Court set out its rationale for equitable tolling of the FELA statute of limitations:

> Statutes of limitations are primarily designed to assure fairness to defendants. . . . This policy of repose, designed to protect defendants, is frequently outweighed, however, where the interests of justice require vindication of the plaintiff's rights. . . . [There are c]onsiderations in favor of tolling the federal statute of limitations in this case[.] . . . Petitioner here did not sleep on his rights but brought an action within the statutory period in a state court of competent jurisdiction. . . . Respondent could not have relied upon the policy of repose embodied in the limitation statute, for it was aware that petitioner was actively pursuing his FELA remedy[.]

This Court has applied the reasoning of *Burnett*:

> "The primary purpose of a statute of limitations is to compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend." . . . "Statutes of limitation . . . are practical and pragmatic devices to spare the courts from litigation of stale claims." They stimulate activity, punish negligence and promote repose by giving security and stability to human affairs. However, this policy of repose is often outweighed "where the interests of justice require vindication of the plaintiff's rights."

*Bruce v. Bruce*, 79 N.C. App. 579, 583, 339 S.E.2d 855, 858 (1986) (quoting 51 Am. Jur. 2d *Limitations of Actions* Section 17 (1970); Chase *Securities Corp. v. Donaldson*, 325 U.S. 304, 314, 89 L. Ed. 1628, 1635 (1945); and *Burnett*, 380 U.S. at 428, 13 L. Ed. 2d at 945)) (other citation omitted). Examination of the record reveals the presence of the considerations identified by the *Burnett* Court as warranting equitable tolling of the statute of limitations.

First, Plaintiff did not "sit on his rights." At the hearing on Defendant's summary judgment motion, Plaintiff argued that the cause of action accrued in January 2001, when he was diagnosed with osteoarthritis caused by years of walking on large ballast. Plaintiff filed his claim in December 2002. Assuming, *arguendo*, that Plaintiff accurately identified when the statute of limitations began to run, his claim was timely filed. Further, Plaintiff promptly refiled his case following dismissal for improper venue. Nor did he seek a voluntary dismissal in response to an unsuccessful attempt to continue the case.

Indeed, it is Defendant's dismissal motions that have delayed the resolution of Plaintiff's claims. For example, Defendant's summary judgment motion, which is based on a June 2005 deposition, asserts that the statute of limitations began to run in "the 1980s or 1990's." However, Defendant delayed filing its motion until just before trial, more than four years after Plaintiff filed suit and over two years after Plaintiff was deposed. Additionally, there is a relationship between Defendant's motion to dismiss for improper venue and its motion for summary judgment:

1. Plaintiff filed suit in December 2002. Eighteen months later, Defendant moved to transfer the case to Richmond. Thereafter, Plaintiff might reasonably believe that the trial would be conducted in Virginia.

2. In October 2005, less than a month before trial and almost three years after Plaintiff filed suit, Defendant moved to dismiss Plaintiff's case for improper venue.

3. Plaintiff promptly refiled suit in North Carolina, but Defendant did not move for summary judgment until August 2007, just before the trial was to start and more than four and a half years after Plaintiff filed suit.

4. Defendant's summary judgment motion was based on excerpts from Plaintiff's deposition. The deposition would not have been admissible in Virginia, where the case was originally scheduled for trial.

Thus, Defendant's summary judgment motion was only possible because it waited until after discovery was completed in Virginia before moving for dismissal for improper venue, then filed the summary judgment motion in a jurisdiction where the deposition would be admissible.

Moreover, Plaintiff explicitly raised the issue of the admissibility of Plaintiff's deposition. Plaintiff's counsel told the trial court that the Plaintiff's deposition was taken in Virginia, where a deposition cannot be used as the basis for a summary judgment motion. Because Plaintiff's counsel expected the trial to be conducted in Virginia, he had not examined Plaintiff to clarify Plaintiff's responses to some of Defendant's questions. The trial court told the parties it was "concerned about this statute argument they're making because of the deposition testimony" asking Plaintiff's counsel if it

were not true that he "anticipated that not being used in trial?" Plaintiff's counsel stated:

> [T]he rules in Virginia are clear that a deposition such as this one, a Discovery deposition, cannot be used to attack the lawsuit itself. It's prohibited. So, when defense counsel finishes examining your plaintiff, we normally do not ask that plaintiff any questions[.]
>
> . . . .
>
> If we had, at that time, known that [the Virginia trial judge] was going to throw the case out and rule that it should be in North Carolina, and knowing your rules here, we certainly would have asked [Plaintiff] . . . ["]Did you know what was causing the pain to your knees?"
>
> . . . .
>
> I would ask the Court to at least consider that and let [Plaintiff] be heard since all of these questions were defense cross-examination basically, aimed at one thing.

Thus, regardless of whether Defendant <u>intended</u> to mislead Plaintiff about the trial's venue, the <u>effect</u> of Defendant's last minute dismissal motion was to provide it with ammunition for a later summary judgment motion. The statute of limitations "exists 'to encourage the prompt presentation of claims' against [Defendant].' It does not exist to reward the [defendant] for deft legal maneuvering. [Defendant] was put on notice to defend against this action in [December] of [2002] and at all times since the filing of the complaint . . . has been aware that [Plaintiff] was pursuing his legal rights." *Stanfill v. United States*, 43 F. Supp. 2d 1304, 1311 (M.D. AL 1999) (quoting *United States v. Kubrick*, 444 U.S. 111, 117, 62 L. Ed. 2d 259, 266 (1979)).

We also find no indication that equitable tolling of the statute of limitations prejudiced Defendant. Significantly, unless the FELA statute of limitations is equitably tolled for the period of time that the case was pending in North Carolina, Plaintiff will lose, not only his "day in court" to determine the substantive issues raised in his complaint, but also the opportunity to meet Defendant's summary judgment motion with testimony or affidavits that clarify some of Plaintiff's deposition responses and address the issue of the onset of his condition.

"The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995) (citation omitted). In the instant case, we conclude that the evidence supports equitable tolling of the statute of limitations during the time the case was pending in North Carolina, and that this part of the trial court's order should be affirmed.

Finally, we consider the trial court's ruling tolling the statute of limitations for up to a year after the entry of its order. We discern no basis for this part of the court's order other than the application of Rule 41. Accordingly, the trial court erred by tolling the statute of limitations after its order became final, and this part of the trial court's ruling must be reversed.

The "defendant's action in taking an appeal from the dismissal order tolled the running of the [statute of] limitation[s] until final appellate action was taken[.]" *West v. Reddick, Inc.*, 302 N.C. 201, 204, 274 S.E.2d 221, 224 (1981). N.C.R. App. P. 32 provides in pertinent part that:

(a) . . . [T]he mandate of the court consists of certified copies of its judgment and of its opinion[.] . . . The mandate is issued by its transmittal from the clerk of the issuing court to the clerk . . . of the tribunal from which appeal was taken to the issuing court.

(b) Unless a court orders otherwise, its clerk shall enter judgment and issue the mandate of the court 20 days after the written opinion of the court has been filed with the clerk.

We conclude that the record supports the equitable tolling of the statute of limitations during the time that Plaintiff's case was pending in North Carolina, and that it continues to be tolled until the issuance of our mandate in this case. Thereafter, the statute of limitations begins to run again. For the reasons discussed above, we conclude that the trial court's order must be

Affirmed in part and reversed in part.

Judges BRYANT and JACKSON concur.